IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____
                                           :
ARTHUR PORTNOFF,                           :        CIVIL ACTION
                                           :
              *Plaintiff*,                 :
                                           :
         v.                                :        No. 16-5955
                                           :
JANSSEN PHARMACEUTICALS, INC., et al.,     :
                                           :
              *Defendants*.                :
_____:

Goldberg, J.                                                  February 22, 2017

## Memorandum Opinion

One hundred and six (106) separate lawsuits were filed in the Court of Common Pleas of Philadelphia County alleging injuries sustained as a result of ingesting Invokana, a prescription drug used to treat Type 2 Diabetes. Plaintiffs describe a variety of ailments, including kidney failure and diabetic ketoacidosis.

Six separate law firms representing the plaintiffs in a number of these actions filed a "Petition to Consolidate and for Mass Tort Designation" in the Philadelphia County Court of Common Pleas.[1] The initial consolidation petition was filed on September 23, 2016, but was later withdrawn on October 11, 2016. On the same day, a second petition was filed. Relying on the second petition, Defendants removed all 106 cases to the United States District Court for the

_____

[1] The Philadelphia Court of Common Pleas created a Mass Tort Program to streamline the adjudication process of complex mass tort cases. Under this program, where numerous cases present similar causes of action and theories of liability against the same defendant(s), the parties may seek consolidation as a Mass Tort. Consolidation permits the parties to engage in coordinated discovery and further provides a singular forum to resolve issues that may apply to multiple, or even all of, the individual cases. In recent years, several products liability cases involving pharmaceutical drugs and other medications have been consolidated as Mass Tort Programs. See The Philadelphia Courts – Complex Litigation Center – Mass Tort Information, http://www.courts.phila.gov/common-pleas/trial/civil/clc.asp (last visited Feb. 2, 2017); Engstrom v. Bayer Corp., 855 A.2d 52, 54 n.1 (Pa. Super. 2004).

Eastern District of Pennsylvania, asserting federal jurisdiction as a mass action pursuant to the Class Action Fairness Act ("CAFA"). <u>See</u> 28 U.S.C. § 1332(d)(11).

Plaintiff contests removal and has filed a motion to remand arguing that Defendants' attempt to remove those cases was untimely, and also that this Court lacks jurisdiction under CAFA.[2] For the reasons that follow, Plaintiff's motion will be denied, and I will maintain jurisdiction over these cases.

## I.        <u>LEGAL STANDARDS</u>

"A defendant may remove a case in 'any civil action brought in a State court of which the district courts of the United States have original jurisdiction[.]'" <u>Portillo v. Nat'l Freight, Inc.</u>, 169 F. Supp. 3d 585, 592 (D.N.J. 2016) (quoting 28 U.S.C. § 1441(a)). CAFA confers on federal district courts original jurisdiction over "mass actions," which are defined as "any civil action … in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact[.]" <u>Mississippi ex rel. Hood v. AU Optronics Corp.</u>, 134 S. Ct. 736, 739 (2014) (quoting 28 U.S.C. § 1332(d)(11)(B)(ii)).

To remove a "mass action" under CAFA, four jurisdictional requirements must be met: (1) there must be 100 or more plaintiffs; (2) whose claims are proposed to be tried jointly on the ground that the claims involve common questions of law or fact; (3) minimum diversity; and (4) the amount in controversy must exceed $5,000,000, as aggregated across all individual

---

[2] The parties in the 106 cases have informally treated this matter as a lead case, and Plaintiffs in all but one of the other cases have joined in the motion to remand. Although the references in this Opinion are to a singular Plaintiff (i.e., Plaintiff Portnoff who filed the instant motion), my ruling will also apply to the other cases.

claims. 28 U.S.C. § 1332(d)(2)(A), (d)(11)(B)(i); Hood ex rel. Mississippi v. JP Morgan Chase & Co., 737 F.3d 78, 85 (5th Cir. 2013).[3]

"CAFA does not change the traditional rule that the party seeking to remove the case to federal court bears the burden of establishing federal jurisdiction." Lowery v. Alabama Power Co., 483 F.3d 1184, 1208 (11th Cir. 2007) (quoting Evans v. Walter Indus., Inc., 449 F.3d 1159, 1164 (11th Cir. 2006)). However, while "removal statutes must generally be strictly construed, with any doubt to be resolved in favor of remand, the presumption against removal does not apply to class actions invoking jurisdiction under [CAFA]." Gallagher v. Johnson & Johnson Consumer Companies, Inc., 169 F. Supp. 3d 598, 602 (D.N.J. 2016). "Congress enacted CAFA to facilitate class actions in federal court, and its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." Id. at 602 (citing Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. 547, 554 (2014)) (internal quotations omitted).

In ascertaining the removability of a mass action under CAFA, 28 U.S.C. § 1332(d)(11)(A) states that "[f]or purposes of this subsection and section 1453, a mass action shall be deemed to be a class action[.]" The United States Court of Appeals for the Third Circuit has thus recognized that the plain text of § 1332(d)(11)(A) makes clear that a mass action is considered a "class action" for purposes of CAFA's removal provisions. Abraham v. St. Croix Renaissance Grp., L.L.L.P, 719 F.3d 270, 275 (3d Cir. 2013).

Section 1453(b) states in relevant part that a "class action may be removed to a district court of the United States in accordance with section 1446[.]" 28 U.S.C. § 1453(b). Where an initial pleading does not allege sufficient facts supporting removal under § 1446(b)(1),

---

[3] Federal jurisdiction may be asserted only over those plaintiffs whose claims individually exceed $75,000. 28 U.S.C. § 1332(d)(11)(B)(i).

§ 1446(b)(3) dictates that "a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3) (emphasis added). This provision is central to the dispute before me. "As with jurisdiction, the defendant bears the burden of showing the timeliness of removal." Mims v. 84 Lumber Co., 2013 WL 4775306, at *2 (D. Del. Sept. 6, 2013).

## II.   ANALYSIS

Plaintiff argues that this case should be remanded because Defendants did not pursue removal within the thirty-day time limit, and also because this Court lacks jurisdiction over the 106 removed cases under CAFA's mass action provision. The timeliness issue is addressed first.

### A. *Timeliness*

#### i. The Parties' Positions

Plaintiff argues that Defendants could have "first ascertained" that this matter was removable under CAFA when the initial "Petition to Consolidate and for Mass Tort Designation" (the "Initial Petition") was filed in the Philadelphia Court of Common Pleas on September 23, 2016. Plaintiff urges that the Initial Petition constituted an "other paper" under § 1446(b)(3) that set forth the basis for federal jurisdiction.[4] As Defendants did not remove this case until November 9, 2016—more than 30 days after the filing of the Initial Petition, Plaintiff asserts that removal was untimely. Plaintiff explains that although the Initial Petition outlined 87 pending cases, it included claims for over 100 Plaintiffs, providing sufficient notice of removability, and

---

[4] The term "other paper" is not defined by § 1446, and the Third Circuit has not clearly defined it in the context of the statute. Davis v. Donnelly, 2015 WL 765988, at *5 (E.D. Pa. Feb. 24, 2015). Nevertheless, the parties do not dispute that either of Plaintiff's Petitions to Consolidate for Mass Tort Designation constituted "other papers." Additionally, neither party asserts that Plaintiff's complaint provided a sufficient basis for removal under § 1446(b)(1).

therefore, the thirty-day removal clock "started to tick" on September 23, 2016. (Pl.'s Mot. to Remand 3–5; Initial Pet., Ex. 1.)

Plaintiff further stresses that the October 11, 2016 Petition to Consolidate and for Mass Tort Designation (the "Second Petition")—the document which Defendants relied upon as the basis for removal—was merely a "refiled version" of the Initial Petition. According to Plaintiff, the substance of the Initial Petition and the Second Petition was identical, and any basis for removability gleaned from the Second Petition could have been equally ascertained from the Initial Petition. (Id. at 4.)

Defendants raise several arguments in support of removal. Defendants first point out that the September 23 Initial Petition was withdrawn from the state-court docket on October 11, 2016, and thus any question pertaining to removability based on the Initial Petition was moot.

Alternatively, Defendants argue that CAFA's numerosity requirement was not satisfied based on the Initial Petition. Defendants explain that the Initial Petition was submitted on behalf of only six (6) law firms that collectively represented fewer than 100 plaintiffs. Defendants acknowledge that the Initial Petition identified additional cases filed by *other* plaintiffs who were represented by *other* counsel, and collectively totaled over 100 plaintiffs. However, Defendants insist that they had no legal basis to ascertain that these "other plaintiffs" would acquiesce to the proposal for consolidation until the twenty-day deadline for opposing the petition expired pursuant to Philadelphia Civil Rule 208.3(b)(2)(B) (stating that, with a few exceptions, "all Motions have a twenty (20) day response period").[5] Defendants stress that approximately two (2) days before the deadline to respond to the Initial Petition expired, that petition was withdrawn, and Plaintiff filed the Second Petition. Thus, even if the issue is not moot, Defendants argue that

---

[5] Plaintiff has not challenged Defendants' assertion that a twenty-day deadline applied to the period in which "other plaintiffs" represented by "other counsel" could object to consolidation.

they could not have conclusively ascertained removability from the withdrawn Initial Petition because CAFA's numerosity requirement had not been satisfied.

Defendants raise a somewhat similar argument with respect to the Second Petition. They point out that, like the Initial Petition, the Second Petition was submitted on behalf of the same six law firms. A chart attached to the Second Petition identified ninety-four (94) cases, and the six law firms were listed as counsel in just sixty-seven (67) of those cases, involving approximately ninety-six (96) plaintiffs—short of the 100 required to meet CAFA's numerosity requirement. Ultimately, Defendants contend that they could not ascertain whether the cases were removable as a mass action until October 31, 2016, 20 days after the Second Petition had been filed (the deadline under Rule 208.3(b)(2)(B) by which "other plaintiffs" were required to object to consolidation). According to Defendants, it was only at this point in time that they could first ascertain that any remaining "other plaintiffs" acquiesced to consolidation, and thus the total number of plaintiffs actually seeking consolidation reached 100.

Given the filing history described above regarding the petitions to consolidate, Defendants assert that their November 9, 2016 Notice of Removal filed with this Court was timely.[6]

ii.   <u>Did the Initial Petition (September 23, 2016) Serve as a Proper Basis for Removal?</u>

A legal assistant employed by one of the Plaintiff's attorneys submitted an affidavit regarding the filing of the Initial and Second Petitions at issue. There, she states that on or about October 11, 2016, the "Court Administrator" from the Philadelphia Court of Common Pleas contacted her and "instructed" her to withdraw the Initial Petition and re-file it under a case

---

[6] I recognize that November 9, 2016 falls within the 30-day window for removal even if measured from October 11 (the date on which the Second Petition was filed). However, as will be discussed *infra*, Plaintiff also argues that removal was not "effectuated" until November 17, 2016, which falls outside of the 30-day window if measured from October 11.

specific caption. (Pl.'s Mot. to Remand, Ex. G ¶ 7; see also Hr'g Tr. 64:2–15, Jan. 11, 2017.)
The affidavit further attests that a "Praecipe to Withdraw Plaintiffs' [Initial] Petition" was filed
on October 11, 2016, and a modified petition (the Second Petition) in the "Arthur Portnoff case"
was filed at the same time. (Ex. G ¶ 9.) The affidavit concludes that, "[a]ccording to the [state
court docket,] the originally filed Petition was officially discontinued" on October 11, 2016 at
2:23 p.m. (Id.)

   Under these circumstances, I agree with Defendants that the withdrawal of the Initial
Petition rendered it legally inoperable for purposes of providing Defendants with an adequate
basis for removal. It would be counterintuitive to hold Defendants responsible for ascertaining
the removability of a withdrawn filing. Other facts surrounding the filing and withdrawal of the
Initial Petition and filing of the Second Petition support this conclusion.

   First, the Initial Petition seems to have improperly initiated a "new case," as evidenced by
the fact that it included a "Civil Cover Sheet" for the Philadelphia Court of Common Pleas Trial
Division. (Initial Pet. at 1.) In fact, the Initial Petition displayed the caption, "Portnoff vs. No
Name" on the face of the Petition cover sheet and exhibited an entirely different docket number
from the existing case of Portnoff v. Janssen Pharmaceuticals, Inc., et al. (the case in which the
Second Petition was filed). Further, the "Answer/Response Date" outlined on the Initial Petition
was not correct and listed a date of September 23, 2016—the very same day it was filed. The
Second Petition, on the other hand, properly exhibited an "Answer/Response Date" of October
31, 2016, which comports with Defendants' assertion that a twenty-day response period was in
effect. (2d Pet. at 1.)

   These facts illustrate the difference in form between the Initial and Second petitions, and
establish that the Second Petition was not a "refiled" version of the Initial Petition. In short, the

Initial Petition was filed in error, and became a legal nullity on October 11, 2016 when it was "officially discontinued." (See Hr'g Tr. 67:13–18; 68:6–25; 69:8–17.) For these additional reasons, I find that the Initial Petition could not serve as the basis for removal.

        iii.    <u>Did the Initial Petition Provide Sufficient Notice that CAFA's Numerosity Requirement Was Satisfied?</u>

Even if the timeliness of removal was not rendered moot by the Initial Petition's withdrawal, Defendants assert that the September 23, 2016 Initial Petition still did not provide sufficient notice of removability because the number of plaintiffs required for removal under CAFA (at least 100) could not be ascertained.

Few cases within this circuit discuss the time requirements of 28 U.S.C. § 1446 in connection with cases removed under the provisions of CAFA. <u>Portillo</u>, 169 F. Supp. at 597 n.12. However, one district court confronting this issue recognized that:

> [T]he 30-day removal clock does not begin to run until litigation documents . . . reveal facts supporting removal…. As a result, a defendant may be able to remove an action under CAFA well into the course of the litigation. Critically, though, . . . the triggering event focuses solely upon the defendant's receipt of a litigation document, that is, the scope of the defendant's knowledge . . . plays no role in triggering the 30-day removal clock.

<u>Id.</u> at 593 (citing <u>Romulus v. CVS Pharmacy, Inc.</u>, 770 F.3d 67, 74 (1st Cir. 2014)).

Outside of the CAFA context, the Third Circuit has similarly not provided explicit directives as it relates to construing an "other paper" and the timeliness of removal under § 1446(b)(3). However, in construing § 1446(b)(1), which pertains to removal based on a plaintiff's initial pleading, the Third Circuit held in <u>Foster v. Mut. Fire, Marine & Inland Ins. Co.</u>, 986 F.2d 48, 54 (3d Cir. 1993) (overruled on other grounds) that "the relevant test is not what the defendants purportedly knew, but what these documents said." The court instructed that

§ 1446(b)(1) requires defendants to file a notice of removal within thirty days after receiving an initial pleading which in itself provides adequate notice of federal jurisdiction. Id. at 54.

At least one court within the Eastern District of Pennsylvania has extrapolated the Third Circuit's holding in Foster to § 1446(b)(3) when assessing the timeliness of removal premised upon an "other paper":

> The Third Circuit has not reached the issue of what test or standard applies to assess when [§ 1446(b)(3)] is triggered. However, in light of Foster, removal inquiries should be confined to "court-related documents" and not involve courts "in arduous inquiries into [a] defendant's state of mind." . . . While Foster's holding only applies to what court documents are sufficient to constitute an "initial pleading" pursuant to § 1446(b)[1], thus triggering the first thirty-day window, the reasoning and analysis employed by the Third Circuit are equally applicable to when a Defendant could "ascertain" that the case is one which is or has become removable. Accordingly, the second thirty-day window requires defendants to file their notices of removal within thirty days after receiving an … ["other paper"] which on its face or in conjunction with previous court-related documents provides Defendant with adequate notice of federal jurisdiction.

Bouchard v. CBS Corp., 2012 WL 1344388, at *5 (E.D. Pa. Apr. 17, 2012) (citing Foster, 986 F.2d at 54).

The Third Circuit appears to have endorsed this approach in one of its most recently published opinions (albeit in a footnote). See Papp v. Fore–Kast Sales Co., 842 F.3d 805, 816 n.10 (3d Cir. 2016) (accepting the appellant's argument that it had no independent duty to ascertain removability, and that, in determining removability based upon an "other paper," courts ask whether it "informs the reader, to a substantial degree of specificity, that all elements of federal jurisdiction are present").

Several other circuit courts have applied similar standards in construing § 1446(b)(3) in connection with CAFA cases. See e.g., Walker v. Trailer Transit, Inc., 727 F.3d 819, 825 (7th Cir. 2013) ("[T]he clock commences *only* when the defendant receives [an] … other paper that

affirmatively and unambiguously specifies [sufficient facts] to satisfy the federal jurisdictional minimums. This approach conforms to the standard adopted by our sister circuits.") (emphasis in original); <u>Romulus</u>, 770 F.3d at 74 ("Section 1446(b)(3) does not apply until removability can first be ascertained from the *plaintiffs*' own papers. Based on the text of the statute, we hold that the defendant looks to the papers provided by the plaintiffs to determine whether Section 1446(b)'s removal clocks have been triggered.") (emphasis in original); <u>Kuxhausen v. BMW Fin. Servs. NA LLC</u>, 707 F.3d 1136, 1141 (9th Cir. 2013) (reiterating that courts "don't charge defendants with notice of removability until they've received a paper that gives them enough information to remove"); <u>Cutrone v. Mortg. Elec. Registration Sys., Inc.</u>, 749 F.3d 137, 145 (2d Cir. 2014) ("[I]n CAFA cases, the removal [clock of 28 U.S.C. § 1446(b)(3) is] not triggered until the plaintiff serves the defendant with an ... other document that explicitly specifies ... or sets forth facts from which [the jurisdictional requirements] can be [fully] ascertained.... [However,] a defendant must still apply a 'reasonable amount of intelligence' to its reading of a plaintiff's [other paper.]"); <u>Graiser v. Visionworks of Am., Inc.</u>, 819 F.3d 277, 285 (6th Cir. 2016) ("[W]e join our sister circuits and hold that, in CAFA cases, the thirty-day clocks of § 1446(b) begin to run only when the defendant receives a document *from the plaintiff* from which the defendant can unambiguously ascertain CAFA jurisdiction.") (emphasis in original).

As noted above, although a defendant must apply a "reasonable amount of intelligence" when ascertaining removability based on a plaintiff's "other paper," the weight of authority clearly holds that a defendant has no independent duty to investigate whether or not a case is removable. <u>Romulus</u>, 770 F.3d at 75; <u>Kuxhausen</u>, 707 F.3d at 1140; <u>Papp</u>, 842 F.3d at 816 n.10.

In sum, the overall inquiry guiding my analysis will be whether Defendants, in examining the Initial Petition (and applying a reasonable amount of intelligence), were unambiguously

informed to a substantial degree of specificity that the eighty-seven (87) identified cases were removable based on CAFA's numerosity requirement of at least 100 plaintiffs being satisfied.[7]

The chart attached to the Initial Petition identified eighty-seven (87) cases. According to that chart, the six law firms that consented to the filing of the Initial Petition represented approximately eighty-nine (89) plaintiffs in sixty (60) cases. (See Initial Pet., Ex. 1; Pl.'s Mot. to Remand, Ex. E.) This figure is below the required 100 plaintiffs to satisfy CAFA's numerosity requirement.[8] Because there were only eighty-nine (89) plaintiffs that affirmatively proposed consolidation as of September 23, 2016, I conclude that Plaintiff's Initial Petition did not unambiguously notify Defendants to a substantial degree of specificity that the numerosity requirement of CAFA had been satisfied. Thus, it could not "first be ascertained" from the Initial Petition, as of September 23, 2016, that the cases were removable as a mass action under CAFA.

Even more telling is the fact that the Initial Petition was withdrawn before the twenty-day deadline expired by which "other plaintiffs" represented by other counsel (i.e., not from the six law firms filing the Initial Petition) could object to consolidation. Therefore, even assuming that the Initial Petition was not legally inoperable by its withdrawal from the state court docket, the thirty-day removal clock was not triggered *at all* by the Initial Petition because CAFA's numerosity requirement could not be ascertained given the Petition's withdrawal.

---

[7] Practically speaking, this inquiry conforms to other circuits' standards for determining whether an "other paper" provides specific and unambiguous notice that CAFA's jurisdictional requirements have been met.

[8] As noted previously, including the "other plaintiffs" that made up the remaining twenty-seven (27) cases would bring the total number of plaintiffs to over 100. However, Defendants correctly point out that the six law firms that filed the Initial Petition had no legal authority to bind these "other plaintiffs" or make decisions on their behalf. Thus, whether or not these "other plaintiffs" proposed to have their claims tried jointly could not be ascertained until the 20-day deadline to object to consolidation expired under Philadelphia Civil Rule 208.3(b)(2)(B). Therefore, I will exclude them when examining the numerosity requirement as of September 23, 2016.

iv. <u>When Did the Second Petition Provide Sufficient Notice that CAFA's Numerosity Requirement Was Satisfied?</u>

The same analysis used above with respect to the Initial Petition applies to the Second Petition. The October 11, 2016 Second Petition was filed in state court on behalf of the same six law firms that submitted the Initial Petition. The Second Petition identified ninety-four (94) cases in a chart attached as Exhibit 1. (2d Pet., Ex. 1.) According to the chart, the six law firms were listed as counsel in just sixty-seven (67) of those cases. Based on the chart, those 67 cases appear to be comprised of ninety-six (96) plaintiffs—again, short of the 100 required to meet CAFA's numerosity requirement.[9] For similar reasons outlined above with respect to the Initial Petition, I conclude that, as of October 11, 2016, the Second Petition did not unambiguously inform Defendants to a substantial degree of specificity that at least 100 plaintiffs proposed consolidation such that the cases were removable as a mass action under CAFA.

Assuming the twenty-day deadline to respond for the "other plaintiffs" represented by "other counsel" expired on October 31, 2016,[10] it appears that the thirty-day clock would have been triggered on this date because only at that point could it "first be ascertained" that the

---

[9] Both charts attached to the Initial and Second Petitions merely listed "case names" with only one plaintiff listed within each case. However, attached to Plaintiff's motion to remand were copies of the state court dockets for almost all of the cases listed within the Initial Petition. Several of these cases reflected an additional plaintiff (i.e., the loss of consortium spousal plaintiff). Thus, I agree that Defendants could have ascertained that there were eighty-nine (89) plaintiffs who consented to consolidation as of September 23, 2016—despite the fact that, technically speaking, the Initial Petition appears to only list one plaintiff for each case. I further note that the Second Petition chart appears to mirror the first eighty-seven (87) cases outlined in the Initial Petition, but also includes seven (7) additional cases at the end, bringing the total number to ninety-four (94). The six law firms are listed as counsel in each of these additional 7 cases. However, they have not submitted any state court docket sheets to suggest that any of these cases involved multiple plaintiffs, and Defendants argue that the 7 additional cases added only 7 additional plaintiffs as of October 11, 2016. (Defs.' Resp. 17.) Plaintiff has not disputed this contention. Thus, adding seven additional plaintiffs to the 89 figure from the Initial Petition yields 96 plaintiffs that consented to consolidation as of October 11, 2016, still short of the 100 plaintiff requirement.

[10] Plaintiff has not argued that this twenty-day deadline for "other plaintiffs" to object does not apply, nor has Plaintiff cited to any contrary state court rule. Additionally, it appears that the "other counsel" were served with copies of the Second Petition. (Notice of Removal ¶ 5 n.5.)

numerosity requirement was met, and thus the cases were removable under CAFA. Defendants

filed their notice of removal in federal court just nine (9) days later on November 9, 2016—well

within the thirty-day window.[11] Accordingly, I will deny Plaintiff's motion to remand insofar as

it argues that Defendants' removal was untimely.

## B. *Jurisdiction Under CAFA's Mass Action Provision*

In their notice of removal, Defendants contend that this Court has jurisdiction over the

106 related actions pursuant to CAFA's mass action provision. As noted above, the mass action

provision provides that, so long as CAFA's other jurisdictional requirements are met, see 28

U.S.C. § 1332(d)(11)(A), federal district courts have jurisdiction over:

> any civil action . . . in which monetary relief claims of 100 or more persons are
> proposed to be *tried jointly* on the ground that the plaintiffs' claims involve
> common questions of law or fact, except that jurisdiction shall exist only over
> those plaintiffs whose claims in a mass action satisfy the jurisdictional amount
> requirements . . . .

28 U.S.C. § 1332(d)(11)(B)(i) (emphasis added). CAFA explicitly provides that the foregoing

definition of mass action does not include cases in which "the claims have been consolidated or

---

[11] It is not entirely clear from Plaintiff's brief whether he argues that removal was untimely because it was not effectuated under 28 U.S.C. § 1446(d) until November 17, 2016—the date on which the notice of removal was served upon the state court. Nevertheless, this argument also fails. Once a notice of removal is filed in federal court, § 1446(d) imposes two additional requirements on a defendant to "effect" removal and end the state court's jurisdiction. First, written notice must be "promptly" provided to all adverse parties. Second, a copy of the notice of removal must be "promptly" provided to the state court. Plaintiff appears to be correct that removal was not effectuated in this case until November 17, 2016. See In re Diet Drugs, 282 F.3d 220, 232 n.1 (3d Cir. 2002); Resolution Trust Corp. v. Nernberg, 3 F.3d 62, 69 (3d Cir. 1993). However, that determination is not dispositive of the timeliness issue. The plain text of § 1446(b)(3) states that a "notice of removal" may be filed within 30 days of a defendant receiving an "other paper" from which it can first be ascertained that the case is removable. That statute does not state that removal must be effectuated within 30 days. See e.g., Ciglar v. Ruby Tuesday, Inc., 2009 WL 737367 (E.D. Pa. Mar. 19, 2009) (Diamond, J.) (rejecting the plaintiff's argument that removal was untimely under § 1446(b) where the defendant filed its notice of removal in federal court within 30 days of receiving the complaint, but provided a copy to the state court approximately 33 days after receiving a copy of the complaint); see also Boyce v. St. Paul Fire & Marine Ins. Co., 1993 WL 21210, at *3 (E.D. Pa. Jan. 28, 1993) ("Nor does 28 U.S.C. § 1446(d) require that a copy of the removal petition be filed with the state court within the time provided for removal [under § 1446(b)]."). In short, § 1446(d) has no applicability to the timeliness issue before me.

coordinated solely for *pretrial* proceedings." 28 U.S.C. § 1332(d)(11)(B)(ii)(IV) (emphasis added).

According to Defendants, once the period for objecting to the Second Petition lapsed, the Second Petition effectively proposed a *joint trial* of more than 100 plaintiffs' claims and, therefore, the 106 cases before me fall within CAFA's mass action provision.

Plaintiff disagrees and argues that the Second Petition contemplates consolidation for pretrial proceedings only and that the single mention of a joint trial in the Second Petition's conclusion was a "scrivener's error." In support of this argument, Plaintiff submitted an affidavit from counsel who drafted the Second Petition. Counsel also testified at a hearing held on January 11, 2017.

In both her affidavit and testimony, Plaintiff's counsel explained that she used a previously filed petition as a template for the Second Petition and that the proposal for a joint trial contained therein was a scrivener's error. (Pl.'s Reply, Ex. A, Decl. of Pl.'s Counsel; Hr'g Tr. 18:17-22, 28:19-29:21.) Counsel stated that she drafted the Second Petition and then circulated the draft to the other five lawyers who reviewed and ultimately signed the final Petition. (Hr'g Tr. 45:25-48:9.) Counsel recalled that some of these lawyers made comments and revisions to the draft Petition but none of the lawyers commented on or objected to the language proposing a joint trial of the cases. (Id.)

Plaintiff also points to a December 8, 2011 notice issued by the Honorable Judge John W. Herron, then Administrative Judge of the Philadelphia Court of Common Pleas, stating that there would be no consolidation of any pharmaceutical cases in Philadelphia's Mass Tort Program as of January 1, 2012. (Pl.'s Reply, Ex. A, Decl. of Pl.'s Counsel, Ex. 1.) According to Plaintiff, Judge Herron's notice supports his position that the joint trial proposal was a clerical error

14

because the template was created prior to the December 8, 2011 notice prohibiting joint trials. Plaintiff's counsel explained that the template with the joint trial proposal had been "recycled" and filed "many times" since Judge Herron's December 8, 2011 notice. (Hr'g Tr. 16:11-22, 40:15-42:3.)

Plaintiff also notes that he filed a "Supplement" to the Second Petition in the Court of Common Pleas on November 15, 2016—just days after the Notice of Removal was filed in federal court—in which he informed the state court that it was never counsels' "intent to suggest that consolidation of trials occur" and asked to amend "the Petition to remove the scrivener's error." (Pl.'s Mot. to Remand, Ex. A.) Citing Schillinger v. Union Pacific Railroad Company, 425 F.3d 330 (7th Cir. 2005), Plaintiff urges that state court cases should not be removed to federal court as a CAFA mass action if the only basis for jurisdiction is a scrivener's error.

For the reasons that follow, I disagree that the joint trial proposal should be disregarded as a scrivener's error and conclude that Defendants properly removed the 106 actions pending before me pursuant to CAFA's mass action provision.

As an initial matter, it is undisputed that the October 11, 2016 Second Petition explicitly and plainly proposes a joint trial. In a section entitled "Conclusion," the Second Petition states "[i]n sum, the creation of a mass tort program is appropriate here because the Related Actions involve common questions of fact and law and consolidation for pre-trial and *trial* will promote judicial economy and the just and efficient resolution of these actions." (2d Pet. at 6) (emphasis added).

This explicit statement is also consistent with the reasons Plaintiff offered in the Second Petition in support of consolidation. For example, Plaintiff urged that consolidation would help avoid inconsistent judicial rulings and stated, three separate times, that consolidation would

promote the efficient prosecution and "resolution" of the "claims" and/or "actions." (Id. at 5-6)

("efficient resolution of related claims"; "efficient resolution of these actions"; "efficient

prosecution and resolution of these Related Actions.") The terms joint "resolution" of "claims"

and "actions" strongly suggest a joint liability determination—i.e., a joint trial—rather than

coordination for discovery and pretrial proceedings.

The Second Petition also identifies the following as "common issues" amongst the

actions:

> (1) whether Invokana generally caused certain injuries, (2) whether
> Defendants knew of the risks, or should have known of the risks;
> (3) if so, whether Defendants failed to disclose the risks to the
> medical community and/or consumers; and (4) whether Invokana
> was marketed in a way that misrepresented the benefits and risks
> of Invokana® to the medical community and consumers.

(Id. at 5.) The Second Petition goes on to state that "determination of these and other common

issues in a single district will benefit the parties and witnesses." (Id.) Taken together,

"determination" of the four common issues identified above, proposes a joint determination of

liability in the 106 actions.

In short, a common sense reading of the entire Petition establishes that Plaintiff proposed

a joint trial. Plaintiff's reliance on Schillinger v. Union Pacific Railroad Company, 425 F.3d 330

(7th Cir. 2005) and the testimony of Plaintiff's counsel do not change this conclusion.

In Schillinger, the plaintiffs filed a putative class action in state court on behalf of Illinois

land owners and against a railroad and a related company. Id. at 333. The plaintiffs voluntarily

dismissed the related company after realizing that it did not own or operate the relevant railroad

line. Id. Plaintiffs then filed a motion to amend the complaint to expand the class definition to

include property owners nationwide who possessed land over which the railroad had a right of

way. Id. Although the related company had been voluntarily dismissed, the motion and proposed

16

amended complaint listed the railroad as well as the related company as defendants. Id. In litigating the motion to amend, neither the plaintiffs nor the railroad addressed the fact that the previously dismissed related company was again named as a defendant. Id.

After the state court granted the motion to amend, the railroad and related company removed the case to federal court. Id. at 332-33. The defendants argued that the inclusion of the related company should be treated as "the commencement of a new action" after CAFA's effective date entitling defendants to remove under the recently enacted statute. Id. at 333. The district court disagreed and concluded that the inclusion of the related company in the amended complaint was a "scrivener's error," the related company "was never really brought back into the case" and, therefore, defendants were not entitled to invoke federal jurisdiction under CAFA. Id.

The Seventh Circuit found that the district court acted within its discretion in concluding that the related company's inclusion in the amended complaint was a clerical error. Id. In reaching this conclusion, the Seventh Circuit noted that the plaintiffs did not discuss the inclusion of the related company in their motion to amend, the plaintiffs did not serve the related company with the motion, and plaintiffs' counsel filed an affidavit attesting that his staff had used the original complaint as a template and failed to notice the inclusion of the related company in the amended complaint. Id. The Seventh Circuit reasoned that:

> This case should not come to federal court if the only ground for jurisdiction is a clerical error, however careless. . . . When a plaintiff amends his complaint after removal in a way that destroys diversity, a district court must consider the reasons behind the amendment in determining whether remand is proper. If the plaintiff amended simply to destroy diversity, the district court should not remand. . . . But an amendment that is made for legitimate purposes may be a proper ground for a remand to state court. . . . The correction of a clerical mistake falls into the latter category, and the district court would properly have granted a motion to remand if plaintiffs had amended their complaint to correct the mistake. It is a short step from that to the conclusion

> that the district court correctly held that jurisdiction is defeated if one of the pleading elements necessary to establish jurisdiction is a scrivener's error.

Id. at 333-34.

Similar to the Seventh Circuit's approach in Schillinger, when assessing a party's argument that the basis for jurisdiction is founded on a typographical error, courts within this circuit look to the relevant document as a whole to determine whether the disputed language was in fact a typographical error. See, e.g., Kaufman v. Lumber Liquidators, Inc., 2014 WL 7336795, at *4 (D.N.J. Dec. 22, 2014) ("After reviewing the Complaint as a whole, the most reasonable reading indicates that the inclusion of actual damages in the prayer for relief was a typographical error since there is no other reference to injuries or losses incurred by Plaintiffs in the rest of the Complaint"); Jackson v. Prime Motors, Inc., 2011 WL 1883806, at *4 (E.D. Pa. May 18, 2011) ("The acronym 'FDCPA' is also not defined in the pleading, suggesting that a boilerplate 'wherefore' clause was pasted into the Amended Complaint in error.").

Here, as discussed above, the proposal for a joint trial is entirely consistent with several other sections of the Second Petition. In this way, Plaintiff's Petition is distinguishable from the amended complaint considered by the Seventh Circuit in Schillinger.

Defendants also persuasively note that Plaintiff's counsel and her firm have proposed joint trials in other pharmaceutical cases even though they are apparently no longer permitted in Philadelphia's Mass Tort Program. Defendants urge that the "fact that [Plaintiff's Counsel] and others in her firm continue to request joint trials in pharmaceutical cases shows only that they disagree with the determination by the Court of Common Pleas that joint trials are inappropriate in such cases." (Defs.' Surreply 4.) In fact, Plaintiff's counsel herself testified that she has filed similar letters that request—albeit, according to her unknowingly—joint trials of pharmaceutical cases. The fact that five additional attorneys reviewed the Second Petition in this case and failed

to comment on the scrivener's error also undermines Plaintiff's position. See Corber v. Xanodyne Pharm., Inc., 771 F.3d 1218, 1223 (9th Cir. 2014) ("But while plaintiffs are the masters of their complaints, they are also the masters of their petitions for coordination. Stated another way, when we assess whether there has been a proposal for joint trial, we hold plaintiffs responsible for what they have said and done.").

Plaintiff's point that pharmaceutical cases cannot be consolidated for trial in Philadelphia's Mass Tort Program is also not dispositive. Other courts confronted with similar issues have concluded that it is irrelevant whether a joint trial will occur or is likely to occur. It is the proposal for a joint trial that matters. See, e.g., id. at 1224 n.5 ("[W]e must determine whether Plaintiffs proposed a joint trial, not whether one will occur at some future date."); Bullard v. Burlington N. Santa Fe Ry. Co., 535 F.3d 759, 762 (7th Cir. 2008) ("It does not matter whether a trial covering 100 or more plaintiffs actually ensues; the statutory question is whether one has been proposed."); Allen v. Wilson, 2015 WL 846792, at *4 (C.D. Cal. Feb. 26, 2015) ("In other words, whether the joint trial will certainly occur is unimportant; what matters is the proposal.").

Lastly, Plaintiff's efforts in state court to correct the purported clerical error in the Second Petition do not alter my conclusion. Even assuming a state court retains jurisdiction in the period between the filing of a notice of removal in federal court and the filing of a notice in the state court, it seems dubious that a litigant, without any court approval, could effectively erase the basis for federal court jurisdiction from a prior submission to the state court. See Wright Transp., Inc. v. Pilot Corp., 841 F.3d 1266, 1272 (11th Cir. 2016) (quoting In re Burlington, 606 F.3d at 381) ("'removal cases present concerns about forum manipulation that counsel against allowing a plaintiff's post-removal amendments to affect jurisdiction.' Those

concerns dictate that we guard against a plaintiff whose case has been removed to federal court and who then amends its pleadings in an attempt to manipulate its way back into state court"); <u>Rockwell Int'l Corp. v. United States</u>, 549 U.S. 457, 474 (2007) ("when a defendant removes a case to federal court based on the presence of a federal claim, an amendment eliminating the original basis for federal jurisdiction generally does not defeat jurisdiction"); <u>Bullard</u>, 535 F.3d at 762 (7th Cir. 2008) ("we doubt that anything filed after a notice of removal can affect federal jurisdiction").

### III.  <u>CONCLUSION</u>

As previously noted, the Supreme Court has instructed that CAFA was enacted to facilitate adjudication of class actions in federal court and that its provisions should be read broadly. <u>Dart Cherokee</u>, 135 S. Ct. at 554. Given this backdrop and for the reasons set forth above, I conclude that Defendants properly and timely invoked CAFA's mass action provision when they removed the 106 actions to federal court. Consequently, Plaintiff's motion to remand will be denied. An appropriate Order follows.